United States Has The Boot Sure Enough This Ring? You got all your papers squared away? It's always one of the... You always want to, before you hear, present your argument. It's always, I remember from an argument case, it's always disconcerting. If your papers are out of order, you want to make sure you've got everything at hand. But you all ready? Yes. Okay, and you've reserved five minutes of rebuttal, is that correct? Yes, Your Honor. Okay, you can start whenever you're ready. Good morning, Your Honors. May it please the Court. This Court should again reject the CRT's decision, reverse it, and order reliquidation this time. Counsel, what is Timber Products' definition for the commercial designation? What do they say the commercial designation of myrtlewood plywood should be? What is the definition? The definition is plywood faced with a mixture or group of species... Go through this slowly and articulately so we all understand. Plywood that is faced with a mixture or group of species with similar physical properties that make them suitable for their same end use in their ultimate application as floor and underlayment and cabinetry and furniture substrate. That is the uniform definition. Okay, hold on. Didn't you assert in the first litigation the definition was 35 near species to viral plywood? I shouldn't say first litigation because it's all the same litigation, but I mean when it came appealed here to our court earlier, it seemed to me having looked back at those briefs that that's what you were arguing the designation was then. 35 near species to virola. Am I wrong? Yes, Your Honor. I am wrong? In a sense, yes, because the 35 species was not inconsistent. Are you saying that's not what your briefs say? No, it was not just, Your Honor, it was not just 35 species of trees as identified by the CIT. It was 35, first of all, it was proximate. These plywood traders are not botanists. Under the Supreme Court, they were not required to be botanists. I just want to know what you asserted in the earlier stage of this litigation before you came here to appeal was the definition, and I understood it from your brief to actually have the exact language. There are 35 near species in addition to all the species within the genus of virola plywood. These are near species, so they're admittedly not within the genus, but they're near to it. Yes, Your Honor, but the number 35 wasn't what was important to the plywood traders. They said it was approximately 35, but the issue wasn't that it was a specific number or an identification of botanical species. It was that it was a group, that it was a mixture. The issue was not that it was one number versus another. These traders are not botanists. Under the Supreme Court, they... But in your brief to this Court, you repeatedly used the number 35 in the earlier version of the... Because it was some of the witnesses had been told by the Mills that there were approximately 35 species in the group, but that wasn't what was important to them as plywood traders when they were selling this product at wholesale throughout the United States. They sold this product as a mixture, and they told their customers it was a mixture of species. Whether it was 35 species or 40 species or 60 wasn't the important thing. Is it possible, Ms. Ring, that you may have stated the test a little differently then, but in the light of further experience, you've refined it further? Well, I don't think the definitions, Your Honor, are inconsistent. It is not inconsistent that there can be a mixture with a certain... a specific or an approximate number of species. To reword it or rephrase it as a mixture, we were emphasizing what was important to the plywood traders, that it was a mixture of species. Perhaps the use of the number might have been misleading  to plywood traders. They could have cared less how many were in the group. They knew it was a mixture. But you did, in your briefs to this Court, talk about 35 near species, and so what I'm trying to understand is, should I now understand this definition you gave me today just with the notion that it's approximately 35 and give you that caveat, but it's still in the order of 35 near species that would be encompassed in this definition? You're not going to tell me tomorrow it's 100 or yesterday it's 5. It's in that ballpark? Your Honor, I don't think the number is in any way relevant to the commercial definition. We might have identified it as such initially, but the important thing to the plywood traders was that it was a group, that it was a mixture, and that the number was not what was important to them. One other thing that seemed to me to be important to the plywood traders seemed to be origin of this particular wood, and yet I noticed the definition you just gave me doesn't limit it to South America, much less Brazil, and it seems to me some of your plywood traders suggested it was these blends from Brazil, and others of your plywood traders suggested it was of South American origin, and obviously they each have in their own mind an idea of this distinct geographic location of this plywood, which is what they call virola plywood, and yet your definition that you gave to me contains no similar geographic designation. Your Honor, the country of origin was not what was significant to these plywood traders. How can I tell that, though? They said it, right? Their testimony is, it is plywood from Brazil, and that's what distinguishes it from, and I'm going to say this wrong, Luana and Morante. Say it again for me. Luana and Morante. Okay, Luana and Morante. So, because to me, my understanding is you were trying to come up with a commercial replacement for Luana and Morante, and you thought virola had the same properties. The only real difference is these are the trees in Brazil, versus the ones in the other countries. I don't remember where the other ones come from, but they're not from South America. Thank you. But I did understand that to be an important component of it, that the people in the plywood trade believed that this was the Brazilian version of what's available from East Asia, alternatively in these other forms. Well, correct. I mean, it wasn't that they came from Brazil versus Venezuela. That wasn't the issue. There was no evidence in the record that virola plywood came from any country other than Brazil. When this product was first introduced into the market, it was introduced as a competitive product to the commodity plywood that was coming out of Southeast Asia, known at that time as Morante and Luana. But why wouldn't you suggest your commercial designation, then, is plywood from Brazil? It's not just plywood with a mixed face or group of species, because wouldn't that cover Luana and Morante? Wouldn't that definition cover both of those? So you would suggest that virola actually includes these completely distinct products. No, you're quite right. It comes from South America, and Brazil is in South America. And to the plywood traders, when they referred to virola, they meant plywood from South America, which happened to come from Brazil, because that was the only country where there was any evidence whatsoever that this plywood came from. So, I mean, to them, they identified, yes, when you had commodity plywood made of mixed species with similar physical properties for underlayment and substrate applications, it was called virola when it came from South America, Brazil. Okay, so the commercial designation you gave us initially probably ought to be qualified to state South America or Brazil, because otherwise Luana and these other two would just fall within that definition. Yes, you're quite right. Yes, I agree, Lauren, that's true. But it wasn't the country of origin that was the focus of them. It was that, yes, the ones from that part of the world versus the other. No, but the country of origin, it seems to me, is quite significant to the commercial designation. I mean, there is some reason these plywood traders look at this and say it's Luana and this and say it's virola, because maybe just looking at it, they can't tell the difference. I don't know. You can tell me. Maybe looking at these two pieces of wood, they wouldn't be able to tell the difference. They're otherwise exactly the same for all intents and purposes in terms of use and appearance. It's only the country of origin that is the difference. Or the region of origin. I mean, to them, they know that the commodity plywood from South America is called virola, and the only country they knew in South America that actually manufactured this product was Brazil. So Brazil versus Venezuela versus Chile versus Peru wasn't the issue to them. It was that part of the world versus. Let me pick up on Judge Moore's colloquy with you. It's a very interesting colloquy. I take it that the focus then that you two have sort of worked out, or at least you're arguing for, is one that doesn't focus so much on the particular label or species of tree, but rather on its characteristics and its qualities for particular uses, such as underlayment and substrate application. Do I understand you correctly? That's correct, Your Honor. Let's assume that out in the Middle East, somewhere in Saudi Arabia, they discover that sand can be compacted in certain ways to make plywood that has all of those characteristics and qualities and is very good for use for underlayment and competes directly with Veranti and Luan plywood. Sand? Sand. Like from the desert? Like from the desert. Sand. And they manufacture it into a product that looks just like plywood. Would that come under the virola classification? No. Why not? Because this is plywood, and plywood is made from wood. Wood is made from trees. All right. If you don't like my sand hypothetical, let's do it from desert plants. They discover there's a kind of desert plant out there. These people are very creative, and they come up with a desert plant that has a wood product. Would that qualify as virola? No, Your Honor, because it's plywood. It's made from trees. Well, these are trees. Botanically, well, okay. Make it a tree. I don't know what kind of trees they have out there. Pick a country that's not normally thought of as producing plywood, but it turns out that under modern technology we're able to take a tree and make it into a plywood that has the same qualities and can be used in the same way and in the marketplace competes with your Brazilian virola product and with the Luan product from the Far East. Will that come in under the virola category? Probably not, Your Honor. It would not be called virola because virola is identified  If there is nothing in other parts of the world that could be identified as virola by the mills that are manufacturing it, then it would not be called virola. Counsel, I have one other problem with your definition. It's troubling me. Help me out here. Your definition was plywood faced with a mixture or group of species, and there was more to it.  I understood the rest, though. So what if the plywood was made purely of virola, actual virola from the species of the genus of virola, botanically? It was not a mixture. Suddenly that wouldn't fall within your commercial designation of virola the way you've defined it. No, not at all. It wouldn't because that's one of the species that's in the mixture. No, I'm saying it's pure. There's no mixture. This is only virola. A mixture implies more than one. If you look it up in the dictionary, it's more than one mixed together. If it was pure virola, so it was a single species within the genus of virola that is indisputably in all accounts recognized as virola, it wouldn't then fit within your definition because it's not a mixture. No, Your Honor. When we say a mixture, we mean any one of that group can be on the face plywood. In the trade, the plywood is identified by what's on the face plywood. There can only be one species on the face plywood. So it's not any one of the mixture, is it? Am I misunderstanding it? The face ply can be any one of a huge different group of species, both virola and near species. Then you've improperly used the word mixture as far as I can tell. The witnesses used the word mixture because when they went down to the mills and they saw how the plywood was actually made, they saw a number of different types of trees being manufactured into it that were all in the mix and they were all commingled in the manufacturing process. So when we say there's a mixture, we don't mean there's more than one tree species on the face ply. There is one on the face ply. But you do generally because what you're saying is often there is more than one. The trade designation means a mixture, not that there is a mixture of species on the face ply in each case. It is an identification within the trade that any one of this mixture or any one of this group can appear. One or more of this group. One or more of this group. No, there can only be one on the face ply because they don't normally flitch them together. It's called flitching. There's usually one because they peel the trees into the- But there are three layers, as I understand it. Except, well, it's more than one. I thought I read something about three layers. You obviously are knowing more about this than I am, but three layers are more. And so I understood when you offered the definition of mixture that what you meant was it could be one or more species in those layers. It didn't all have to be the same thing. The concept of mixture refers both to the manufacturing of the actual plywood panel and it also refers to the outer ply, which can consist of any one of the mixture of this group, any one of which can show up on the face ply because they're commingled in the manufacturing process. And the one that is chosen to appear on the shipping documents, which is the only place the species identification appears rather than in the host cells, will be the one that is the predominant species in that production cycle that they have on the face ply. Yes, so it was conceivable. And in fact, we have an entry in this case of Varrola SPP that is on the face ply and identified as such on one particular- The white Varrola. The white Varrola SPP was identified on one entry, which the CIT refused to even classify consistently its own color. No, but wasn't that because your client acknowledged that they weren't actually sure that all of the pieces contained in that shipment were in fact white Varrola because you didn't sort them that way? It is physically impossible to sort them. They are not sorted and segregated in the manufacturing process that way. And in fact, the national import specialist who testified for the government said that the government does not require a laboratory report that certifies the botanical identity of each outer ply in each panel, in each crate, in each shipment. Of course not because generally they would rely on the, it seems to me, producer's or importer's designation as being accurate. But I'm just curious because it seems to me that in a situation where the importer has acknowledged that we don't know what the contents of the shipment are, it seems completely reasonable that they would disallow you to therefore classify it under Varrola. Well, first of all, if the position is, and if you accept that, the term Varrola in 44-12-13-40 can only be botanical Varrola SPP. And yet the government does not require you to produce a lab report showing the exact species on each outer ply in each crate in each shipment. And in light of how this plywood is actually manufactured from a multitude of species, all of it, and they only manufactured plywood that was sold at wholesale in the United States from species that had similar physical properties that could meet an order for Varrola in the U.S. wholesale trade, any one of which could be on the outer ply. Ms. Rain, you've actually gone beyond your rebuttal. We'll restore your time because you had a fair number of questions. But I think before you sit down, Judge Plager had a question. I have one final question perhaps we can deal with briefly. I'm familiar with plywood, although I'm not familiar with its manufacture. And I'm also familiar with the kind of plywood that I would buy in Lowe's for underlayment or substrate applications. It's a fairly basic, rough-looking plywood. Help me on this one question. I'm picturing plywood in my mind, and I appreciate how it's put together with all the plies. The face sheet, would the face sheet typically constitute a one particular tree or species of tree, or could it be all? I don't know how it's manufactured. Does the manufacturing process result in a variety of strands or lumber pieces that go into the face sheet, and it could be a mixture in the face sheet itself? If I may, I actually have an exhibit that I could show you of a piece of plywood to demonstrate that. If I understand your question, Your Honor, this is a small piece of plywood. You're asking, could this outer face ply or outer ply consist of more than one species? Yes. No, because the way they actually manufacture it, if you can imagine a log going through a giant pencil sharpener, which is the veneer machine, which actually peels the log, and the sheet comes off the veneer machine. So you're going to have a full sheet of a particular log, and those logs and those veneers, if you will, get loaded up like a gigantic sandwich. And they have many, many, many different logs that get stacked up. And they sort them before they sandwich them and glue them and press them and heat them. They sort them by quality, so the better quality veneers are used for the outer plies, and the lesser quality ones are used for the middle plies. One log would constitute a 4-by-8 sheet of plywood? One log would constitute a veneer or one of the layers or one of the plies. The top ply would come from one log? Yes, that's correct, Your Honor. You would normally not have more than one. Thank you, Ms. Raines. We'll give you your rebuttal, and we'll hear from the government. Ms. Walter? Please, the court. During the colloquy with Timber's counsel, Judge Moore focused on the definition being presented by Timber for the commercial designation of Barola. That colloquy demonstrates that the definition that is now proffered by Timber is not certain of understanding, period. At once, it could be any one of a group, but the group's not identified. Previously, in the first segment of this case, it was identified as consisting of approximately 35 species that were near Barola and also included Barola. At the very least, with that definition, there was some limited scope in which you could even measure the classification of imported plywood from Brazil. But now we can't even do that with the present definition. Mixture. Does it mean that the outer ply consists of several different types of trees? Counsel, wouldn't it be possible for the wholesaler, though? I don't mean to attribute my ignorance to everyone else in the world, but wouldn't it be possible for the wholesaler to say, look, I don't know what's in this, but I know it when I see it. That's Barola plywood from Brazil. I know it. Look at it. It's a consistent quality. It's appropriate for this kind of use. You can look at it. You can feel it. You can bang on it. You know that's what it is. I may not be so sure of which of the trees from Brazil went into making this, but I know that that's what I consider to be Barola plywood. That is what is a commercial designation, that all of the wholesalers would know that's Barola plywood because it looks and feels and is used for a certain purpose. Couldn't that be a commercial designation? No. Why not? As I understood the court's question, you're asking whether or not individual wholesalers, on their own, can identify what they understand to be Barola as being Barola. But that's not the standard for commercial designation. For commercial designation, all of the tree has to understand the same thing. It has to be definite, uniform. It has to be general throughout the United States. Let's say it's definite and uniform. Let's say 100% of all the wholesalers in the United States identify the same thing as Barola plywood. That's certainly uniform, and that they get it right identically 100% of the time. It's just that they're basing their designation, their definition in their mind, on not which kind of species went into making this thing, but what it looks like, what it feels like, what it can be used for. And that is the absolute, with 100% certainty, understood definition from all commercial wholesalers. Can't that be the definition? Does the definition have to be rigidly limited to some number of species? I guess what I'm underlying, what I'm getting at. Actually, now I understand the question. The common meaning, and I'm going to answer it by saying this, the common meaning for the term Barola is all species of the genus Barola. It recognizes that some species may not have been found yet. But we know, based upon their botanical characteristics, that if one were to look at these species, they're all related. They belong to the same family. In which case we have scope. We know that any species within that genus falls within the category of Barola. But the trade isn't interested in the botanical origins of a particular kind of weird lumber. What the trade is interested in is a particular kind of usable plywood that has certain characteristics that every plywood wholesaler can say, ah, that's what my customers want. I know it when I see it. And if it's good enough for pornography, why wouldn't it be good enough for the lumber industry? And that would be true, Your Honor, if the trade actually didn't care about botanical species. Because I disagree with you, based upon the evidence that was presented to Judge Poe, that the trade finds this stuff to be irrelevant. Okay, so let me understand what you just said. Because I think that what you just said, and I want to make sure I'm not mischaracterizing it, is that you now agree with, I think, what Judge Flager and I might have posited as a hypothetical, which is that the trade could have a commercial meaning for plywood that doesn't focus at all on species, but you're saying that's not what they proved in this case, and it's their burden of proof to do that. No, that's not what I'm saying. What I'm saying is that the evidence that was before the trial court here demonstrated without any doubt that the plywood trade in the United States concerned itself with species, botanical species. In fact, the evidence presented to the trial court demonstrated clearly the term species itself is a botanical scientific term. It means a distinct kind of wood. The plywood trade in the United States actually identified the plywood imported into this country based upon the outer ply, the specific ply being the base ply, and that meant the species of the base ply. When they sold this merchandise based upon the evidence before the trial court, it was identified based upon the specific characteristics of specific kinds of trees. When they used this merchandise, it's not just as underlayment. For sure, that is a big deal. However, when you go to buy oak, you want oak, and you don't want birch. You don't want pine. You want what you understand oak to be, and any person, any consumer or wholesaler, understands that to be a specific category or type of tree, and it can be measured in the industry, and it is measured. The IHPA has a list of all the different tropical woods imported into the United States from Africa, from Asia, from South America, or wherever, and in that list, it identifies, based upon trade names that are commercially used in the United States as well as elsewhere, scientific names as well as countries of origin. So I would submit to this court that the trade absolutely concerns itself with the identification of species. Counsel, I understand that you would submit it, but we have to look at the evidence that was presented below, and Ms. Hemingway, Mr. Mansbach, several of these different wholesalers, it seemed to me, or people who the court has acknowledged or accepted as people who represented wholesale industry, they seem to me to focus not on the particular species, but characteristics of the wood, and in some extent, country of origin. Am I wrong about that? Did they also say, and it's important to us that this be varroa of this particular species? No, I think your reading of what those witnesses said is absolutely correct, and what the trial court found was that they were not representative of the wholesale trade for plywood in the United States, that those meanings that they ascribed or assigned to the term varroa were personal to them, and not terms, a definition or meaning that was utilized throughout the trade. I mean, this is one of those rare cases where you actually have a plywood trade. According to Timber's witnesses, that trade association actually puts out directives on marketing. What is the evidence that the court below, to refresh my recollection, articulated for the notion that the plywood trade absolutely focused on species? I understand for the common meaning, the court absolutely said that, but for commercial designation, what is the evidence below that existed to contradict all these statements? The IHPA list, which the tropical species of woods imported into the United States. That was put forth by the International Hardwood Plywood Association, and if you'll court's indulgence for a moment here, I'll find it for you in the record. And did the court say, we're going to credit the IHPA list, and that we don't find credible or acceptable the testimony of all of these different individuals? I think the court used the IHPA list to weigh the testimony of Timber's witnesses. With commercial designation, the burden is on the party that is proffering that commercial designation to demonstrate that it is definite, uniform, and general throughout the United States. The court wasn't required to find that there was another meaning for another commercial designation, or that there were other meanings assigned to the term within the wholesale trade. The court had to just measure the meaning that was proffered by Timber, and that's what it did here. I definitely understand. Pardon me for one second, Your Honor. It begins at JA 314 and ends at JA 339. I absolutely understand. The court focused on the definiteness in this case and made factual findings such that they made, and the generality and things. But I guess part of the reason I'm sort of concerned about this is because you seem to be fighting the notion that it would be impossible for any commercial designation to exist for a piece of plywood that didn't include a species. And I'm not saying that they proved it in this case. I haven't made that determination yet. But you're saying it's impossible for such an animal to exist. You don't care if they line up a thousand wholesalers outside who are going to come in and say the same thing, that that wouldn't be enough. That wouldn't do it. And that's kind of what I'm trying to get at the heart of, which is, why? Because that's what I don't get. If everyone in the industry believes there's a commercial designation, granted it's different from the common meaning, it doesn't involve botany, because not all these wholesalers necessarily are... I'm not believing all these wholesalers are as focused on botany as you want me to believe. Maybe I'm wrong, but the evidence doesn't suggest they are. So maybe they didn't rise to the level of proving the definiteness, but I don't know. But I am troubled with the argument you're making now, which is it would be impossible for them to ever do so. Well, I'm not suggesting that it's an impossibility, but I am suggesting that based on the evidence that was presented below, they didn't. In this case, we concern ourselves with the evidence that was put before the trial court. And whether there was an actual commercial designation for the rolla that was definite and uniform throughout the trade that was different than its common meaning existed wasn't proven below. That was a burden. So it really doesn't matter whether it could exist. It wasn't demonstrated here. Is your idea that it wasn't proven below sort of, I think, mirror what the CFC found in this case, which is along the lines of, well, look, one expert said three to five near species. Another expert said that's where the definiteness is missing. Is that what you would argue? How is their proof not sufficient in terms of definiteness? The fact that the International Hardwood-Plywood Association had a different definition than the one being presented by... I said CFC and I meant CIT because the last case was the CFC. And I'm sorry I got them mixed up. I understood you. I apologize, Your Honor. But the fact that there's any evidence that the trade had an alternate meaning that was different than the commercial meaning that they proffered is enough to nuke their commercial meaning. Period. There can only be one commercial meaning that is wholly and totally accepted throughout the trade. If there were ten commercial meanings and everybody who understood those individual meanings was convinced and totally understood it, it defeats the commercial designation. The commercial designation is actually supplanting a common meaning. It has to be such that everybody agrees. It has to be one where no one's going to dispute what it includes. We all know what it includes, and we're assuming that because we all know what it includes, Congress also knew when it passed the statute. And what we're saying here is that if this intimate group of people had a meaning that they assigned to the role that they used, and they don't care what it is for real because they're going to use it as underlayment. The people they sell to are going to put rugs on it. That's all fine. But they had to demonstrate that their meaning was accepted throughout the trade in the United States, and the plywood trade specifically. Just let me ask one quick question, because I know your time's dwindling down here. JA 312 and the list that you alerted me to, the IHPA, it has the word plywood in the name, but isn't that list pertaining to lumber, and is there a difference between lumber and plywood for these purposes? I'm just not sure. I want you to enlighten me on it, because I'm trying to understand this. No. The International Hardwood Plywood Association started off as solely a plywood association. Over time, it started to include all manner of woods, from the raw log that was imported, to the veneer standing alone that was shaved from the log, to the manufactured product from the veneers, meaning the plywood. So even though it identifies in the list lumber and doesn't use the word plywood, I should assume it's plywood? Actually, you're looking at JA 312? Yes. And the very next page, 313, discusses plywood, the face ply. Okay. Thank you. It's discussing plywood. Got it. As well as other wood products. So there is a certain symmetry here, because you're going from the specific tree to the outer ply of plywood. I'm with you. And I see that my time is now exhausted. Thank you very much. Thank you, Ms. Walter. Ms. Ring, you have your rebuttal. Why don't you start out by addressing that last discussion about the association's definition problem? The document which government counsel refers to as IHPA list was distributed exclusively to importing members of that association for exclusively purposes of preparing shipping documents for entry into the United States. And even the Court of International Trade found that those shipping documents were not distributed to wholesale customers in the United States. There was affirmative evidence that this IHPA list was not used to buy and supply wood at wholesale. It was only used for purposes of identifying the species for compliance with the CITES treaty. For compliance with the... For those of us who are not in your trade. Yes. Thank you. The Brazilian government is a part of that treaty. The United States government is a part of that treaty. That's the purpose of this list. It was done in conjunction with the cooperation of the association and the animal and plant inspection service that actually distributed this. And if you actually look on page 810, it says that this package was sent to all IHPA members who identified themselves as direct importers of wood and wood products. And the cover page specifically says, the industry has agreed to use one of the accepted common names and or the common botanical scientific name on the bill of lading accompanying the shipment to identify the contents of the shipment. But this document was not used to buy and sell plywood at wholesale. In fact, the wholesale witnesses in this case... Are the wholesalers members of this association? Some of them might be, but they wouldn't be getting this. And they wouldn't have seen it. In fact, when it was shown to them at trial, they said they had never seen it before. Mr. Braverman had never seen it before. Mr. Mansback hadn't seen it before. Ms. Hemingway had not seen it before, except in deposition, perhaps. I'm probably thoroughly confused at this point. But help me understand this. Is the issue before us what the wholesalers and retailers understand? Or is the issue before us what the importers in the customs agency understand? Oh, no, no, no, your Honor. Commercial designation is by wholesalers, is established by the testimony of those who trade a product at wholesale in the United States. In this case, all the importers who testified did sell at wholesale throughout the United States. And in fact, most importers do sell at wholesale. And then they sell on to wholesalers, who in turn sell on to perhaps other wholesalers or distributors or retailers. But that is how commercial designation is established. It's established by people who actually trade the product at wholesale. But when these products come into the United States in big bundles and are offloaded from the ship, and it says on it Verola, I assume that's the shipping label or whatever the shipping label or the import label is going to say on it? Usually the crates are not necessarily identified. In some cases they might be, but the species name would not necessarily be on the crate. They'd be on the bill of lading, and they would be on the commercial label. On the bill of lading that comes with the crate. Right, right. The customs officials look at that? Yes. Do they ever look in the crate to see what's in it, bodies or band, or do they check to see that it's plywood, and if so, what the species is? They don't normally take lab reports or lab samples. On occasion they could. But if we're establishing a commercial meaning of the term Verola that encompasses a group of species, any one of which could be identified on the bill of lading or on the commercial invoice as one that is commercially, in turn, sold in the United States as Verola, and that could include on the shipping documents Sumauma, Fouvera, Amosplau, White Verola, or Verola SPP, or any number of other terms that appear on the shipping documents. But if they want to test it, certainly they can test it. And in fact, early on in the years after this tariff provision was enacted, they would take tests to see if something was commercially, was actually botanically Verola SPP, because that was the government's position. But they don't do that anymore. It's now mainly a paperwork exercise. I'm not aware, Your Honor. My clients haven't been telling me that they've been actually taking lab samples today. It's possible that they can do it. I haven't heard people doing anything. So nobody really cares what's in the box. It's a question of what's on the label, on the invoice, on the bill of lading. Nobody cares what's on the label either. For wholesale purposes, nobody cares, that's for sure. That's only for purposes of regulatory requirements, that they have to identify a species on the bill of lading. It has nothing to do with how the product is bought and sold at wholesale. Ms. Ring, thank you. You're into your extra rebuttals, so I think we'll have to end proceedings. The case is submitted at this point. Panel H plus will withdraw.